545 So.2d 610 (1989)
King HUMPHRIES, Jr., et al. Plaintiffs-Appellees,
v.
LOUISIANA DEPARTMENT OF PUBLIC WORKS, DIVISION OF TRANSPORTATION, et al. Defendants-Appellants.
No. 88-146.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1989.
*612 Jack F. Owens, Jr., Harrisonburg, for plaintiffs-appellees.
Smith, Taliaferro, Seibert, Boothe & Purris, Leo Boothe, Jonesville, Wm. Guste, Baton Rouge, for defendants-appellants.
Before DOMENGEAUX, STOKER and KNOLL, JJ.
KNOLL, Judge.
This appeal addresses DOTD's liability for the placement of an "End Construction" sign in a curve on the shoulder of a highway, and the trial court's assessment of damages.
The State of Louisiana, Department of Transportation and Development (hereafter DOTD), appeals an adverse judgment of the trial court which found the fault of DOTD and Charles Shaw, an eastbound motorist, combined to cause an automobile accident which resulted in the death of Anna Humphries, plaintiffs' wife and mother respectively, who was traveling west on a state highway.
The learned trial court summarized the facts of this case in its written reasons for judgment which we adopt as our own:
"On January 25, 1984 at approximately 6:00 a.m., Anna Humphries was driving on Highway 8. As she entered the curve east of the Bayou Louie Bridge, the vehicle driven by Charles Shaw crossed the center line and struck her vehicle. As a result of the accident Anna was killed and Shaw received serious injuries. The Department of Transportation and Development, a few days prior to this accident, had begun taking some core samples of the bed of Bayou Louie with the intent to replace or rebuild the existing bridge. Before beginning the sampling activities *613 the D.O.T.D. ordered certain signs be erected. One Nathan Ashley installed certain signs as per a directive of the Department of Transportation and Development. Mr. Ashley installed a barricade on the east side of the Bayou Louie Bridge 500 feet from the end of the bridge (the work activity was to take place on the Bayou Louie Bridge). The signing installed at that point was a winged barricade approximately 4 feet high and 8 feet wide. The barricade is painted with reflectorized paint and facing the east to give warning to traffic heading west. To the driver heading west the sign would be on the left side of the road. On top of that sign was placed an end construction sign which faced west advising eastbound traffic that they had cleared the construction zone. That sign was 5 feet wide and 2 feet in height. The sign was constructed on the shoulder of the road some 2½ to 3 feet from the travel portion of the highway and thereafter completely obstructed the shoulder. The edge of the shoulder of the road is clearly marked with reflectorized signs that indicate the extent of degree of the curve. For eastbound traffic there was signing on the right side of the road consisting of 3 orange diamond shaped signs and the marking 1500 feet, 1000 feet and 500 feet before construction.
On the morning of the accident, Mr. Shaw had worked all night as an employee of the Catahoula Parish Sheriff's office in his capacity as jailer. He left the Sheriff's Office and began his drive home. Approximately one mile before the bridge he passed his sister, Mary Dunbar Atkins, who testified she was driving 50-55 miles per hour. Based on Ms. Atkins's testimony together with the testimony of Trooper Jack Daughtry and Mr. [Sylvanus] Walker, an expert in accident reconstruction and mechanical engineering, it is the Opinion of this Court that Mr. Shaw was operating his vehicle in excess of 65 miles per hour as he came off the Bayou Louie Bridge and entered the curve. Shortly thereafter, his right wheels dropped off the pavement onto the shoulder. He was surprized by the barricade which blocked the shoulder of the road and he jerked his vehicle violently to the left bringing his right front wheel back onto the shoulder approximately 65 feet from the sign. His vehicle struck the Humphries vehicle head-on resulting in the demise of Mrs. Anna Humphries."
Based on these facts, the trial court assessed 60% fault to Shaw, finding his excessive speed and inattentiveness contributed to the accident, and assessed 40% fault to DOTD, finding the placement of the advisory sign obstructed the shoulder and caused Shaw to take evasive actions when he inadvertently found himself on the shoulder.
Anna Humphries had ten children and a surviving husband. The trial court awarded $20,000 damages each to five of Anna Humphries' major children, $25,000 damages each to four other major children, and $50,000 to her youngest child, King Humphries, III, who although being an eighteen year old major, was in high school and lived at home. Anna Humphries' husband, King Humphries, Jr., was awarded general damages of $75,000 and special damages for loss of future income, totaling $39,322.86.
The trial court also awarded Security National Insurance Company, the collision insurer of the Humphries, $4,650 against DOTD and Shaw for its subrogation claim for the value of the automobile it paid the Humphries.
In Shaw's claim against DOTD the trial court awarded him $100,000 general damages. This was reduced by his percentage of fault. In DOTD's reconventional demand against Shaw, the trial court awarded it judgment against Shaw for 60% of all amounts paid by it to Anna Humphries' husband and children.
After DOTD appealed, King Humphries, Jr., Anna Humphries' husband, died and their children filed a motion asking to be substituted in his stead.
*614 DOTD contends that the trial court erred: (1) in finding it partially at fault; (2) in failing to find Shaw 100% at fault; (3) in making an excessive damage award to the various plaintiffs; (4) in making an award to Security National; (5) in making an excessive damage award to Shaw; (6) in overruling its exceptions of prescription and no cause of action filed by it to Shaw's demands; and, (7) in failing to recuse the trial judge.

DOTD'S LIABILITY
DOTD contends that the trial court erred in finding it liable for Anna Humphries' death as a result of this automobile accident. It argues that it followed the Manual of Uniform Traffic Control Devices in its placement of the "end construction" sign on the shoulder of the highway, and under LSA-R.S. 32:235 E it discharged its obligations to the motoring public.
DOTD may be liable for negligence if it is actually or constructively aware of the hazardous condition or defect and fails to take corrective action within a reasonable time. DOTD may also be held strictly liable under LSA-C.C. Art. 2317 as custodian of a defective shoulder in normal use. Under both a negligence theory of liability or strict liability, liability will hinge on whether DOTD breached its duty to the plaintiff. Deville v. State Through DOTD, 498 So.2d 1142, 1144 (La.App. 3rd Cir.1986).
In the present case, DOTD erected the barricade in question. Knowledge of the barricade was not questioned, which is the only elemental difference between a negligence and strict liability analysis; therefore, we shall analyze the facts of this case as a negligence action.
In Forest v. State, Thru Louisiana D. of Transp., 493 So.2d 563 (La.1986), the Supreme Court re-established that, in cases for recovery on the grounds of negligence, the court must consider the asserted negligence utilizing a duty-risk analysis. In Forest at page 569, the court stated:
"The duty-risk approach as set forth ... is essentially an analysis of the following questions in any given case:
Was defendant's conduct a cause in fact of the accident?
Did defendant owe a legal duty which encompassed the particular risk of harm to which plaintiff was exposed?
Did defendant breach that duty?
What damages, if any, did plaintiff sustain?"
Initially, we must determine whether DOTD's action was a cause in fact of the death of Anna Humphries. This inquiry does not call for a determination of the substantial, legal or proximate cause of the harm, but simply whether the defendant played any role in causing the harm suffered. Brock v. New Orleans Pub. Serv., Inc., 433 So.2d 1083 (La.App. 4th Cir.1983), writs denied, 437 So.2d 1147, 1148 (La. 1983).
In the case sub judice, Anna Humphries' heirs (hereafter the Humphries) contend that DOTD's placement of the "End Construction" sign in the middle of a curve on the outside shoulder constituted an unreasonable risk of harm to the motoring public. They argue that the sign almost completely obstructed the shoulder, and prevented Shaw from using the shoulder to regain control of his automobile and gradually re-enter the traveled portion of the highway.
Before addressing this question, a factual question must be resolved concerning the distance of the sign from the paved highway. DOTD contends that the trial court manifestly erred when it concluded that the sign was constructed 2½ to 3 feet from the traveled portion of the highway. Instead, DOTD argues that the evidence established that the sign was 5 feet 9 inches away from the paved highway. It is axiomatic that an appellate court will not disturb a trial court's factual determinations, unless they are clearly wrong. In the present case the trial court was presented with conflicting evidence regarding the location of the barricade, due in part to the fact that some of the measurements for the location of the winged barricade were made after removal of the sign. After carefully examining the evidence presented, we can not say the trial court *615 was clearly wrong in its determination that the barricade was 2½ to 3 feet away from the highway.
Having addressed that factual matter, the evidence preponderates that Shaw, traveling in a curve well in excess of the posted 35 m.p.h. speed limit, inadvertently steered his automobile off the traveled portion of the highway, and just one second away from the "End Construction" sign, approximatley 65 feet, jerked the wheel of his automobile to the left to re-enter the paved highway because he perceived that he was about to hit the sign. Under these facts, we find that DOTD's placement of the sign on the outside shoulder in the middle of a curve was at least a contributing cause of Anna Humphries' death.
We must next determine whether DOTD owed a legal duty and whether that duty encompassed the particular risk which caused Anna Humphries' death. DOTD has the basic duty to maintain all highways in the state highway system. LSA-R.S. 48:21. The maintenance of highway shoulders in a reasonably safe condition is included within the duties of DOTD, and this duty encompasses the obligation to protect a motorist who inadvertently drives onto the shoulder. Although DOTD is not an insurer of the safety of motorists using state highways, it can not knowingly allow a condition to exist which is hazardous to a reasonably prudent motorist. Coleman v. State, Through DOTD, 524 So.2d 1281 (La. App. 3rd Cir.1988). In the present case, there is no question that the highway involved was under DOTD's administration and control; state workers installed the sign which was placed on the highway shoulder, and its placement was done in association with a state construction project on the Bayou Louie Bridge. On this basis, we find that DOTD owed a legal duty to Anna Humphries and Shaw.
Our next task is to determine whether or not DOTD's duty to keep the shoulder reasonably safe encompasses the risk of harm which befell Anna Humphries. Simply stated, is the risk that a speeding, inattentive driver would veer onto the shoulder, oversteer his vehicle when suddenly confronted with an obstructed shoulder in the middle of a curve, and in an attempt to avoid hitting the obstruction, kill an oncoming motorist, encompassed within the duty of the State to maintain the highway shoulders so that they will be reasonably safe?
In reviewing the record, we find that the learned trial judge thoroughly addressed this question, when he stated:
"[H]ad the sign or barricade not been placed as it was in the middle of the curve obstructing the shoulder Mr. Shaw would not have jerked his automobile to the left and would have avoided a collision with Mrs. Humphries... The response by Mr. Shaw to the sudden appearance (at least in his mind) of the sign was nothing more than a natural reflex.

* * * * * *
In further considering the negligence of the State of Louisiana, Department of Transportation and Development, one must consider the duty the Department owes to the motoring public. First, the purpose of the barricade is to advise and give notice to traffic entering the construction zone that there is in fact a hazard or construction present. The purpose of the barricade is not to attach an end construction sign, but is simply used for the end construction sign as it is a convenient place to attach the sign.
The manual used by Mr. Ashley in placing the sign is provided by the State of Louisiana and clearly sets for the the specifications of the sign. It is noted the specifications are set forth for a straight highway. Mr. Ashley followed those instructions to the letter. He placed the signs exactly as he was told to do. It is doubtful if he thought nor gave any consideration to whether or not the signs could have been placed at any other more convenient or safer locale.
D.O.T.D. owes the motoring public a duty to advise of construction sites and to protect the motoring public from the hazards associated with such construction.

*616 For that reason, it would appear necessary that the D.O.T.D. advise the motoring public when there is no longer construction present so that the motoring public may resume normal highway operation. Should there be a requirement for a precise location for an end construction sign?

* * * * * *
The State further owes a duty to provide a safe shoulder for emergency use and the occasional inattentiveness of drivers. The shoulder provides a buffer zone between the travel portion of the highway and the dangers that lie beyond. It is reasonable to anticipate that an occasional driver through inattentiveness or emergency action or fortuitous event would leave the travel portion of the highway, at least, momentarily. It is also reasonable to believe that the occasion of such highway departure would be greater within a curve. In evaluating whether or not the D.O.T.D. violated a duty owed the motoring public, the Court must weigh the utility of the sign versus the obstruction of the highway shoulder.
In the instant case, it would appear D.O.T.D. violated their duty to the motoring public to provide a safe and unobstructed shoulder. In this case, on the right hand side of the highway of east bound traffic prior to the bridge, there existed three signs giving notice of highway construction. The construction periods were only effective during the daytime. That is, there was no construction during the evening hours. The hours of construction were on a limited basis and were not on a continuous daily basis during the construction period. There exists portable signs which may be used for temporary construction or in areas where construction is sporadic and only on a daily basis. Proceeding east bound from the point of construction and the subsequent location of the barricade and around the curve there exists a substantial straight-away. From the location of the barricade to the end of the curve (proceeding east bound from the barricade through the curve) was not more than 500-700 feet. It would appear the utility of the sign, that is, giving notice to the motoring public of construction ahead and/or the end of construction could have been achieved by placing the sign after the curve in the straight-away. Considering those findings, it is the Opinion of this Court that the sign presented an unreasonable risk to the motoring public in the location it was placed, and is, therefore, at fault in causing the accident."
On appeal DOTD contends that the trial court's resolution of this question places DOTD in the position of being partially liable for Anna Humphries' death even though the trial court found as a matter of fact that DOTD complied with the Manual of Uniform Traffic Control Devices.
DOTD's argument is based on LSA-R.S. 32:235 which provides in pertinent part:
"A. The department shall adopt a manual and specifications for a uniform system of traffic control devices consistent with the provisions of this Chapter for use upon highways within this state.

* * * * * *
E. Proof that any state, ... authority was at the time of any incident complained of in compliance with the provisions of the department's traffic control devices manual shall be prima facie evidence of discharge by such authority of its obligations to the motoring public."
We find DOTD's reliance on LSA-R.S. 32:235 misplaced. Although this statute is premised on compliance with the manual, such compliance alone does not shield DOTD from liability; compliance with the manual, under LSA-R.S. 32:235 E, is merely prima facie evidence "of discharge of ... its obligations to the motoring public." Prima facie evidence is defined as evidence sufficient to establish a given fact and which, if not rebutted or contradicted, will remain sufficient. State v. Williams, 400 So.2d 575 (La.1981). In *617 the present case, the turning point in the trial court's mind was that the "End Construction" sign was located in the middle of a curve on the outside shoulder. The Humphries clearly showed that the manual relied upon by DOTD's worker, Mr. Ashley, in the location of the signs made no provision for sign location in curves. Further, Shaw had a visual impairment before the accident although not serious enough to deprive him of a driver's license. At best he could only see light and dark through his right eye, a physical disability which necessarily affected his ability to determine how far away he was from the barricade when he inadvertently traveled onto the shoulder. Under these circumstances we find the Humphries clearly refutted any prima facie evidence that DOTD's compliance with the manual fulfilled its obligation to the motoring public.
Accordingly, we find no error in the trial court's conclusion that DOTD was partially at fault.
A public authority is liable in solido with a motorist when its negligence, combined with that of a motorist, is found to be the cause of the accident. Forest, supra at page 571. In the case sub judice, we find that the trial court's determination and allocation of fault to Shaw and DOTD in causing the accident is clearly supported by the evidence.
Summarizing this issue, we find the evidence and law support the trial court judgment. The trial court properly determined that, along with the negligence of Shaw, DOTD was negligent, that it breached its duty by obstructing the shoulder of the curve, and that the risk of harm which affected Anna Humphries was within the ambit of DOTD's duty. Therefore, the trial court properly found DOTD solidarily liable with Shaw for the damages suffered.

QUANTUM: KING HUMPHRIES, JR.
DOTD contends that the awards made to Anna Humphries' husband, King Humphries, Jr., for general and special damages were excessive. DOTD argues that the trial court: made two awards for loss of support; failed to take into account the personal comsumption of Mrs. Humphries in determining the amount of future loss of support; incorrectly computed the yearly loss of support; failed to consider the childrens' contributions to the family support; erred in determining Mrs. Humphries' date of birth; and that the award for loss of love and affection was excessive. Because of the interconnexity of the arguments advanced against the awards for general and special damages, they will be treated together.
The first issue resolved by the trial court which DOTD attacks on appeal is its determination of the birthdate of the decedent, Anna Humphries. No birth certificate was admitted into evidence and there was no expert testimony about life expectancy. Over DOTD's hearsay objection, one of Mrs. Humphries' daughter's testified that her mother was born on March 4, 1927; DOTD contended that the year of birth was 1922.
In proving Anna Humphries' age, the Humphries only offered the testimony of Dinna Humphries, a daughter who was born in 1954. Dinna testified, over DOTD's hearsay objection, that from information obtained from the family bible, her mother's birthdate was March 4, 1927. She also testified on cross-examination by DOTD that her mother's maiden name was Anna Marshall, that her maternal grandparents were Mary and Dan Marshall, and that her mother was born in Peck, Louisiana. On appeal, DOTD contends that the trial court should have sustained its hearsay objection to Dinna Humphries' testimony about her mother's date of birth.
One of the oldest exceptions to the hearsay rule encompasses reputation and statements about family history and pedigree. Succession of Rodgers, 499 So.2d 492 (La.App. 2nd Cir.1986). In such cases, hearsay is admissible to prove not only descent and relationship, but also facts as to birth, marriage, and death, and the date when these events occurred. In Re Gray's Succession, 201 La. 121, 9 So.2d 481 (1942).
Considering the foregoing authority, we find no error in the trial court's admission *618 into evidence of the testimony of Anna Humphries' daughter about her mother's birthdate.
In connection with the establishment of Anna Humphries' age at the time of death, DOTD further argues in brief that the trial court erred in releasing Stanley G. Brown, the State Registrar of Vital Records, from DOTD's subpoena duces tecum. Formal exceptions to rulings or orders of the trial court are unnecessary as long as a party, at the time of the ruling or order of the trial court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor. LSA-C.C.P. Art. 1635. To preserve a party's right to urge error on appeal, it is necessary to make a formal objection in the trial court. Bertoli v. Flabiano, 116 So.2d 76 (La.App. 1st Cir.1959). We have carefully examined the record and find that when DOTD learned at trial of the release, it neither objected to the trial court's dismissal of the witness from the subpoena duces tecum nor requested the trial court to have the witness comply with the subpoena as provided by LSA-C.C.P. Art. 1357. Therefore, we shall not consider DOTD's argument on appeal which addresses Mr. Brown's release.
Based on Dinna Humphries' testimony, the trial court determined that Anna Humphries was almost 57 years of age at the time of her death, and concluded that she had a work life expectancy to age 65, namely 8 years, 1 month, and 9 days. Despite the absence of expert testimony concerning Mrs. Humphries' work life expectancy, DOTD does not raise any objection to the trial court's projection of Mrs. Humphries' work life expectancy to age 65.
DOTD contends that from the written reasons for judgment the trial court made two awards for loss of wages to King Humphries, Jr. In support of its contention, DOTD points out that in the trial court's written reasons for judgment, the trial court expressed that it awarded Mr. Humphries $75,000 for the loss of love and affection, consortium and support, and an additional $39,322.86 for the loss of Mrs. Humphries' earnings as a result of her death. In its judgment, the trial court did not label the $75,000 award, i.e., for loss of love and affection, and support.
Treatment of this argument necessitates that we review Mr. Humphries' $75,000 general damage award, and DOTD's argument that the evidence did not establish a close relationship between the parties.
The jurisprudence is legion that the assessment of damages is within the province of the trier of fact, whose judgment is allowed great discretion and deference. Ponder v. Groendyke Transport, Inc., 454 So.2d 823 (La.App. 3rd Cir.1984), writs denied, 457 So.2d 1195, 1198 (La.1984); see also LSA-C.C. Art. 1999. Moreover, a damage award can not be disturbed unless the appellate record clearly reveals that the trier of fact abused its great discretion. If such is the case, the reviewing court may modify the award, but only to the extent of lowering it to the highest point which is reasonably within the discretion afforded the finder of fact. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
In analyzing Mr. Humphries' award for loss of love and affection, DOTD contends, without citation of authority, that the trial court erred in excluding Mrs. Mary Atkins' testimony concerning the decedent's reputation in the community. After sustaining the Humphries' hearsay objection, DOTD made an offer of proof in which Mrs. Atkins discussed the reputation in the community as to the fathers of some of the Humphries' children.
Before disposing of this issue, it is necessary that we refer to an important distinction, drawn in IMC Exploration Co. v. Henderson, 419 So.2d 490 (La.App. 2nd Cir.1982), writs denied, 423 So.2d 1149, 1150 (La.1982), between genuine reputation evidence, which in certain instances is admissible, and gossip and rumor. In IMC Exploration Co., at pages 506, 507 the court stated:
"In cases of this nature, reputation, i.e., the status resulting from the notoriety produced by a cumulation of the facts tending to prove the quality that a *619 person enjoys in a family and in society, must be distinguished from rumor, which is loose talk which the community has not had an opportunity to evaluate and accept or reject. Mere uncorroborated rumor is not competent evidence. Rumor is as much inferior in probative quality to hearsay as reputation is above it; consequently, as a rule, rumor is not relevant evidence to prove a particular fact, nor is testimony as to remarks and stories of neighbors, constituting generalized hearsay gossip."
Applying this standard to the present case, it is clear that the only source of Mrs. Atkins' testimony was uncorroborated discussion in the Sicily Island community about the supposed paternity of these particular children. Accordingly, we find that the trial court properly excluded this portion of Mrs. Atkins' testimony.
Anna and King Humphries, Jr. were married for approximately 30 years, and together raised ten children. Mr. Humphries was disabled, receiving only a monthly allotment of $125 from the Veteran's Administration. As the result of Mr. Humphries' disability, Anna was by necessity the primary breadwinner, working as a nurse's aid at a local nursing home earning $6,303.82 per year at the time of her death, to support her husband and one child who was still in high school at the time of her death.
Considering the $75,000 award, it not being particularly high when viewed in light of the many years of marriage, we find that the trial court considered DOTD's allegations and properly weighed them. Under the facts developed at trial, we find that it would not have been an abuse of discretion for the trial court to award $75,000 alone for loss of love, affection, and consortium. On this basis, we find no merit to DOTD's argument that the loss of support was also included in this figure. Therefore, we will not disturb the trial court's award for general damages.
We now turn our attention to the trial court's award of $39,322.86 for loss of income as the result of Anna Humphries' death.
The trial court did not differentiate between the award for loss of wages, past and future. Nevertheless, since awards of damages for loss of wages up to date of trial can be calculated mathematically from the proof offered, Young v. South Central Bell Tel. Co., 412 So.2d 147 (La.App. 4th Cir.1982), using the yearly salary of Anna Humphries ($6,303.82), which DOTD has not disputed, we have calculated that as of the time of trial, Mrs. Humphries had a loss of past wages totaling $19,415.76; thus leaving an award of $19,907.13 for future loss of wages.
It is a well settled jurisprudential rule that future loss of earnings can not be calculated with absolute, mathematical certainty, and that damages for future loss are, to a certain extent, speculative in character. Sherlock v. Berry, 487 So.2d 555 (La.App. 4th Cir.1986), writ denied, 489 So.2d 912 (La.1986). In determining the measure of damages for loss of future support, the trial court must consider a number of factors including the employee's work record, the amount of her earnings in previous years, and the probability or improbability that she would have been capable of earning comparable or similar amounts for a number of years during her work life expectancy. Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968).
DOTD argues that in computing loss of wages, the trial court should have considered that from time to time Anna Humphries' children helped with household expenses by providing food and paying for utilities. It also contends that the trial court should have reduced the yearly salary of Mrs. Humphries when it computed the future loss of wages because of the increase Mr. Humphries received from the Veteran's Administration in his monthly disability allowance from $125 to $500 after his wife died. DOTD's arguments in these two instances are misplaced. The focus of attention in making the award for loss of wages is the unavailability of decedent's contribution, not the amount that others contribute.
*620 DOTD's next argument, premised on the holding in Roundtree v. Technical Welding & Fabrication Company, Inc., 364 So.2d 1325 (La.App. 4th Cir.1978), writ denied, 367 So.2d 389 (La.1979), is that the trial court should have deducted the decedent's personal living expenses in computing future loss of wages. In Roundtree, the appellate court amended the trial court's award for future loss of wages to allow a discount of 20% for the personal living expenses of the decedent. In the case sub judice, DOTD presented no testimony of Anna Humphries' personal living expenses. Accordingly, considering the absence of evidence in the record, we find no error in the trial court's decision not to deduct the decedent's personal living expenses in computing future loss of wages.
Therefore, after considering the various arguments DOTD raised about the trial court's award for the loss of wages, we can not say that the trial court abused its discretion in awarding $39,322.86.

QUANTUM: HUMPHRIES' CHILDREN
DOTD further argues that the awards for loss of love and affection which the trial court made to Mrs. Humphries' ten children were excessive. The trial court awarded Shelia, Florida, Mickey, Shadrick, and Wanda each $20,000; and alloted $25,000 each to Dan Ray, Dinna, Evora, and Rickey. King Humphries III was awarded $50,000. Other than general attacks on the awards because of excessiveness, DOTD specifically argues that the trial court erroneously awarded an amount to Anna Humphries' youngest major son, King Humphries III, for loss of support, and that there was insufficient proof that Florida Humphries Nelson was the daughter of the decedent.
DOTD initially stresses that there was not a close relationship between Anna Humphries and her children. In support of this statement DOTD rests its contention on the evidence that Mrs. Humphries carried canned goods and the family telephone in her automobile. In light of the testimony that the family stayed in contact with Mrs. Humphries, some of the children who live nearby visiting almost daily, and that Mrs. Humphries helped her children financially, assisted some of them when they were in college, and provided comfort and advice when needed, we can not say that the trial court erred in its conclusion that there was a close family relationship between Mrs. Humphries and her children.
DOTD then contends that in awarding $50,000 to King Humphries, III the trial court erroneously included an amount to compensate him, a major child, for loss of support. DOTD argues that such an award was made because in the trial court's written reasons for judgment it stated that this sum was for loss of love and affection and support. The record establishes that King was 18 years of age at the time of his mother's death, and was a senior at Sicily Island High School. Although King held a part-time job while attending school, he lived at home and was totally dependent on his mother for housing, food, and clothing. In light of the close relationship established by the record, particularly with him, the youngest child, we can not say that the $50,000 award is excessive.
DOTD next contends that the record is void of any evidence that Florida H. Nelson was the daughter of Mrs. Humphries. In support of its contention DOTD argues that Florida's birth certificate was not entered into evidence.
From the outset we note that Florida was unavailable to complete her deposition and because of medical reasons she was unable to testify at trial. As a result, the trial court did not draw any adverse inferences from her absence, and DOTD has not urged that such be drawn on the appellate level.
The record establishes that Florida was born prior to Anna Humphries' marriage to King Humphries, Jr. Dinna Humphries testified, without objection from DOTD, that Florida was the oldest child of Anna Humphries and was raised as part of the Humphries' family. She further stated that after Florida moved to California, she would send gifts to her mother, and Anna *621 Humphries maintained payments on a life insurance policy for Florida. Testimony of other witnesses corroborated Dinna's. DOTD rebutted none of this testimony. Accordingly, we find no merit to DOTD's argument that there was insufficient evidence to support that Florida was Anna Humphries' child.
We find that all the awards to these major children fall within the range which has developed jurisprudentially on the appellate level. See Thomas v. State Farm Ins. Co., 499 So.2d 562 (La.App. 2nd Cir.1986), writs denied, 501 So.2d 213, 215 (La.1987). Keeping in mind the jurisprudence and statutory law, referenced hereinabove, which accords the trial court much discretion in making damage awards, after carefully reviewing the record of this matter, we find that the trial court did not abuse its discretion in its awards to Anna Humphries' children for loss of love and affection.

SECURITY NATIONAL'S SUBROGATION CLAIM
DOTD contends that the trial court erred in awarding Security National, the Humphries' automobile collision insurer, $4,650 which represented reimbursement for the sum it paid the Humphries for the loss of the vehicle.
Even though none of the parties to this litigation have complained, we feel obliged to note from the outset that Security National incorrectly filed a petition in district court styled as a third-party demand against DOTD and Shaw, seeking reimbursement for the amount it paid the Humphries, even though it had not been made a party to the law suit prior to that time. Every pleading shall be construed so as to do substantial justice. LSA-C.C.P. Art. 865. Although this petition should have been filed as a petition for intervention, a cursory examination of the petition makes its purpose evident. Accordingly, since the defendants have not been prejudiced, we shall treat Security National's petition as an intervention.
In Aetna Ins. Co. v. Naquin, 488 So.2d 950 (La.1986), the Supreme Court recognized that a property insurer is not a mere volunteer who has paid a debt, and that such an insurer who pays in its own name and is bound with another debtor ought to be subrogated to the creditor's rights against the other debtor.
In the present case, Security National paid the Humphries and GMAC $4,650 for collision damages. At trial King Humphries, Jr. testified that he received payment from Security National, and identified a photostatic copy of a check from Security National in the amount of $4,650 as evidence of its payment.
DOTD contends on appeal that the trial court should not have awarded Security National the $4,650 because there was no proof of the damages to the automobile, i.e., its value prior to the accident, the amount of repairs needed as a result of the accident, and its salvage value. We agree.
Subrogation is the substitution of one person to the rights of another. LSA-C.C. Art. 1825. Thus, in the case sub judice, when Security National paid the Humphries and GMAC, it was subrogated to their rights against Shaw and DOTD, and it was required to prove the case on the merits that its insured would have had to prove had the insurance policy not been purchased.
In Derouen v. Dept. of Transp. & Development, 392 So.2d 765 (La.App. 3rd Cir. 1980), we stated:
"We are mindful of the liberal rule which holds that if it is evident that a plaintiff has suffered damages the trial court is given broad discretion to fix damages even in the absence of certain evidence of the amount of the damages. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (La.1971). Nevertheless, we believe that the rule does not apply as fully in automobile damage cases where the items of damages are peculiarly within the knowledge of specialists. We are also aware of the rule which permits a claimant to testify concerning his own damages, but we believe that the rule has more validity where the loss is *622 peculiarly within the knowledge or experience of the claimant as for example in the case of lost wages. Coleman v. Victor, 326 So.2d 344 (La. 1976).
Doubtless the pictures plaintiff referred to would graphically show certain damage. We doubt, however, that the extent of damage depicted would establish such assertions as a bent frame, a damaged brake line, or misalignment of wheels, nor would the cost of repair of body damage which might be depicted be indicated by a photograph...
It is well settled that where there is a legal right to recovery but the damages cannot be exactly estimated, the courts have reasonable discretion to assess the damages based upon all the facts and circumstances of the case... Here the damages could have been determined by qualified repairmen with reasonable certainty. There was no necessity for the trial court to make an estimate of damages susceptible of reasonable determination by experts. With respect to the automobile damages, the plaintiffs simply failed to carry their burden of proof."
Applying this jurisprudence to the present facts, we find that Security National failed to prove the property damage to the 1981 Ford Grenada, and that the trial court's reliance on the photographic evidence of the vehicle and the identification by King Humphries, Jr. of the copy of the insurer's check was insufficient to justify an award of damages for the loss of the automobile.
Inasmuch as Security National failed to carry its burden of proof in establishing the damages to its insured's vehicle, we reverse and set aside the trial court's award of $4,650 for the property damage.

QUANTUM: SHAW
DOTD contends that the trial court's $100,000 damage award to Charles Shaw was excessive, and also that the trial court erred in failing to set off the $7,458.75 Shaw owed to LSU Medical Center in Shreveport for medical expenses incurred in connection with this accident.
The standard of appellate review for excessiveness of a damage award was thoroughly set forth hereinabove, and will not be restated.
At the time of the accident Shaw was 35 years of age, and was employed as a jailer for the Catahoula Sheriff's Department. The record further indicates that Shaw also performed occasional work as a carpenter. After the accident, he was treated at E.A. Conway Hospital in Monroe and was transported to LSU Medical Center in Shreveport where he stayed for 22 days. Surgery was performed in Shreveport to set Shaw's right leg which was broken as a result of the accident, and a one-half inch steel pin was inserted to promote healing; sixteen months later surgery was performed at E.A. Conway to remove the pin. At the time of trial, Shaw complained that his right leg was approximately one-half inch shorter, that it caused him to limp, that it was the source of pain, and that it prevented him from working as a carpenter.
The medical records also show that in 1959 Shaw suffered a torn retina in the right eye and was blind. Shaw contended at trial that the vision in his right eye was only blurred, and that because of the injuries to his eye in the accident, planned opthalmological surgery was cancelled.
In attacking the trial court's $100,000 award, DOTD basically argues that there is no medical evidence that Shaw was permanently disabled and that the award for general damages is greater than that made in other appellate cases which involve a broken leg.
From the outset we note that Shaw asked the court to award him damages for pain and suffering, past and future, loss of wages, past and future, and medical expenses. We note that the trial court did not break down Shaw's damage award.
The testimony concerning Shaw's ability to work indicates that although he was able from time to time to supplement his jailer's salary by working as a carpenter at $7 an hour prior to the *623 accident, he was unable to continue this line of work after the accident. Accordingly, we can not say that the trial court erred in awarding Shaw, who was 35 years of age at the time of the accident, a sum for future loss of wages. Even though Shaw's income tax returns were not entered into evidence, we find that based on the W-2 records entered into evidence the trial court could have awarded as much as $40,000 for future loss of wages. We also find that even though Shaw was earning $780 per month working for the sheriff's department at the time of trial, he nonetheless was entitled to receive $500 loss wages, his monthly rate of pay just after the accident, for the month of May 1984, the only pay period in which he was not paid by the sheriff.
We have likewise reviewed the general damages award for excessiveness. Considering Shaw's long hospital stay, almost one month, his permanent limp as a result of his shortened leg, the injury to his already damaged eye, and the severely broken leg, we can not say that the trial court abused its much discretion in allocating the remainder of the judgment for general damages.
Nevertheless, we find that the trial court erred in not awarding DOTD an offset for $7,458.75, the amount of medical services provided by LSU Medical Center at Shreveport. In a supplemental answer to Shaw's reconventional demand, DOTD urged the court to award an off set for the medical services the State provided Shaw at LSU at Shreveport and E.A. Conway Hospital in Monroe. At trial, DOTD proved the amount of medical expenses Shaw incurred in Shreveport, but failed to prove the amount of medical expenses rendered in Monroe. Accordingly, we will amend the judgment to grant DOTD an off set of $7,458.75.

PRESCRIPTION
DOTD next contends that the trial court erred in finding that Shaw's reconventional demand for damages against it had not prescribed. DOTD argues that the accident occurred on January 25, 1984, and that Shaw's reconventional demand was not filed until January 30, 1985.
We find LSA-C.C.P. Art. 1067 dispositive of the issue presented. Article 1067 provides:
"An incidental demand is not barred by prescription or peremption if it was not barred at the time the main demand was filed and is filed within ninety days of date of service of main demand or in the case of a third party defendant within ninety days from service of process of the third party demand."
In the case sub judice, the record reflects that DOTD filed its third-party demand against Shaw on October 29, 1984. Even considering the passage of time from the date of DOTD's filing, it is clear that Shaw's commencement of action against DOTD on January 30, 1985, is within the time limitation provided in Article 1067. Accordingly, we find that the trial court properly denied DOTD's peremptory exception of prescription.

RECUSAL MOTION
DOTD contends that the judge ad hoc, appointed by the trial court, erred when it denied its motion to recuse the trial judge from presiding over this tort action. DOTD argued that since the trial judge granted Shaw a judgment of default against DOTD, a decision which was later reversed on appeal in Humphries v. La. Dept. of Public Works, 498 So.2d 297 (La. App. 3rd Cir.1986), he should be recused because he had already judged the case adverse to DOTD.
LSA-C.C.P. Art. 151 provides in pertinent part:
"B. A judge of any court, trial or appellate, may be recused when he

* * * * * *
(3) Has performed a judicial act in the cause in another court;

* * * * * *
(5) Is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys to such an extent that he would be unable to conduct fair and impartial proceedings...."
*624 In Humphries the trial judge confirmed a default judgment in Shaw's reconventional demand against DOTD. On appeal it was determined that a reversal was in order because Shaw failed to follow the default procedure outlined in LSA-C.C.P. Art. 1704, and accordingly the matter was remanded to the trial court for further proceedings. After DOTD answered Shaw's reconventional demand, trial was had in conjunction with the Humphries' action against DOTD.
After carefully examining the record in light of DOTD's contentions, we find no merit to its argument. In innumerable instances an appellate court remands a civil action to the trial court for further proceedings; this fact alone does not mandate the recusal of the original trial judge under LSA-C.C.P. Art. 151(B)(3). At the same time, we have reviewed the record to see if there was any evidence that the trial judge showed bias in the manner in which he conducted Shaw's remanded action against DOTD, and find the record void of any indication of such. The record shows that the trial court paid great attention to the evidence adduced during this two day trial, listened attentively to the arguments presented by the various parties to the litigation, ruled on various evidentiary questions fairly and with no partiality, and thoroughly analyzed the evidence, in light of the arguments raised by the parties, in its written reasons for judgment. On this basis, we find no error in the judge ad hoc's refusal to recuse the trial judge.
For the foregoing reasons, the judgment of the trial court is affirmed in all respects except: 1) to award DOTD an off set of $7,458.75 to Shaw's damage award; and 2) to reverse and set aside the trial court's award of $4,650 to Security National on its subrogation claim against Shaw and DOTD. Costs of this appeal are assessed to DOTD.
REVERSED IN PART; AND, AFFIRMED AS AMENDED AND RENDERED.