| iBYRNES, Judge.
Plaintiff, Lester Harris brought this claim against the defendants, the Regional Transit Authority and an unknown bus driver, for personal injuries allegedly sustained by Mr. Harris when a bus door closed on him. After a judge trial, the trial court found in favor of the defendants, dismissing plaintiffs claim. Plaintiff appeals. We affirm.
Plaintiff alleges that on his way to work as a butler on or about November 4, 1992 he was injured when a malfunctioning bus door closed too quickly when he tried to exit the bus, catching him and injuring him. He was not sure of the exact date. In ruling against the plaintiff, the trial judge in his reasons for judgment concluded that “absent positive proof that the accident actually occurred or a showing of causation, RTA simply cannot be held liable.”
I. FIRST ASSIGNMENT OF ERROR
Plaintiff contends that the trial court’s holding that no accident occurred was manifestly erroneous. Our standard of review is governed by the principles set forth in the following cases:
Jzl. Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989):
“Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.... [Ajppellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.... When findings are based on determinations regarding the credibility of witnesses, the manifest error—clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.... [Where] a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.”
2. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993):
This court has announced a two-part test for the reversal of a factfinder’s determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
[citation omitted]
This test dictates that a reviewing court must do more than simply review the rec *137 ord for some evidence which supports or controverts the trial court’s finding, [citation omitted] The reviewing court must review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous. Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. [citations omitted] Even though an appellate court may feel its own evaluations and inferences aré more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal. [Emphasis added.]
| ^Although we accord deference to the factfinder, we are cognizant of our constitutional duty to review facts[1], not merely to decide if we, as a reviewing court, would have found the facts differently, but to determine whether the trial court’s verdict was manifestly erroneous or clearly wrong based on the evidence, or clearly without evidentiary support. Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099 (La. 7/5/94), 639 So.2d 216, 221.
The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts. Virgil v. American Guarantee and Liability Ins. Co., 507 So.2d 825 (La.1987); Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973)
We find that the trial court correctly stated the burdens of proof to be borne by the parties:
As a common carrier, RTA is held to the highest degree of care and the slightest negligence causing injury to a fare-paying passenger, such as Lester Harris, will result in liability. Moreover, once proof .of injury to a fare paying passenger is established, the burden shifts to the defendant carrier to show that it is free from negligence; that is, the mere showing of injury to a fare-paying passenger on a public conveyance and his failure to reach his destination safely establishes a prima facie case of negligence and imposes the burden on the carrier of convincingly overcoming the prima facie case [which the trial court found that the RTA succeeded in doing in this case]. Golland v. New Orleans Public Service, Inc. 377 So.2d 84 (La.1979); Smith v. Regional Transit Authority, 559 So.2d 995 (La.App. 4 Cir.), writ denied 566 So.2d 986 (La.1990); McCullough v. Regional Transit Authority, 593 So.2d 731 (La.App. 4 Cir.1992). By contrast, a common carrier is not the insurer |4of its passengers’ safety and therefore not absolutely liable for their safety. Favorite v. Regional Transit Authority, 552 So.2d 487 (La.App. 4 Cir.1989); Smith, 559 So.2d at 997.
Prima facie evidence is defined as evidence sufficient to establish a given fact which, if not rebutted or contradicted, will remain sufficient. State v. Williams, 400 So.2d 575 (La.1981) and Humphries v. Louisiana Dept. of Public Works, Div. of Transp., 545 So.2d 610, 616 (La.App. 3 Cir.1989), writ den. 548 So.2d 1249 (La.1989).
Therefore, in effect, a mere prima facie showing by a fare paying passenger of injury on a public conveyance is sufficient to establish a prima facie ease of negligence on the part of the public conveyance.
The trial judge, in his written reasons for judgment showed clearly that he grasped these precepts, but went on to find that plaintiffs mere prima facie showing of injury to himself as a fare paying passenger on a public conveyance was successfully contradicted and rebutted by the RTA. In the face of the RTA’s countervailing evidence, the plaintiff had the burden of proving by a preponderance of the evidence that the accident had in fact occurred. The trial court found that the plaintiff failed to do so.
The RTA introduced evidence that they had received no report of the incident and that the maintenance records showed no malfunctioning door. These facts are even *138 more favorable to the RTA than those found by this Court in Smith v. Regional Transit Authority, 559 So.2d 995 (LaApp. 4 Cir. 1990), writ den. 566 So.2d 986 (La.1990). In Smith there was an allegation by the plaintiff that when he attempted to use the buzzer on a bus to signal a stop, it did not work. |sThis Court in Smith rejected that contention, relying on the maintenance reports for that bus which showed no problem with the buzzer system.
But the trial court in the instant case relied on more than the mere negative evidence to be found in the RTA claims records and maintenance reports. The trial court noted that Mr. Harris “could not offer evidence even as to the approximate date of the accident.” “Nor could he accurately describe the bus operator or his badge number”, although he stated that he had asked the driver for his badge number and the driver had given it to him. Mr. Harris continued to work after the accident. He allegedly had to forego a number of opportunities to moonlight at cocktail parties because of his injuries, but he could not substantiate this assertion.
Mr. Lester called Lillian Weber who was also on the bus at the time of the alleged accident as a witness. However, Ms. Weber testified that she did not actually see the incident as she was exiting from the front of the bus when Mr. Harris was exiting from the back. (This is not consistent with Mr. Harris’ testimony that they both exited by the same door.) The only thing that she could say was that she heard Mr. Harris “holler.” She did not speak to him. She did not testify that she saw any sign that he had been injured. Mr. Harris testified that she did speak to him. Two days a week Ms. Weber worked where she would get off at the same stop used by Mr. Harris. The record reflects that if the accident occurred when plaintiff alleges that it most likely did, then it was highly unlikely that Ms. Weber would have been getting off at the same stop on that day.
Mr. Harris also called Mr. Kings-mill whom he had consulted for legal advice several weeks after the accident allegedly took place. Mr. Kingsmill letestified that he spoke to someone at the RTA on behalf of Mr. Harris and was informed that the incident had been reported,[2] but that he would have to pursue the claim in court, which the RTA contends is not what employees in then-claims department are instructed to tell people who make such inquiries. He was certain that the person he talked to was in the claims department, although he could not state that the person he talked to specifically identified himself as such. Mr. Kingsmill was not a witness to the accident. The only evidence he could give was second hand, admitted over RTA’s objection. The trial court noted that Mr. Kingsmill was unable to identify the RTA employee with whom he spoke. The fact that it may have been properly admitted pursuant to LSA-R.S. C.E. art. 801D(3)(a) does not mean that the trial judge is compelled to give it the same weight as he might to some other more convincing evidence. There is no requirement that all evidence be accorded the same weight. To the contrary, a basic function of the finder of fact is to weigh the evidence.
The trial court also noted that “no supporting or circumstantial evidence was produced to indicate that the RTA had either destroyed or lost the documentation evidencing an accident involving plaintiff in November of 1992.”
Thus, viewing the record as a whole pursuant to the standard of appellate review set forth at the outset of this section we cannot say that the trial court’s finding that plaintiff failed to prove that the accident had occurred was clearly wrong or manifestly erroneous.
SECOND AND THIRD ASSIGNMENTS OF ERROR
|7In its written reasons for judgment the trial court stated: “Neither Mr. Kingsmill or Ms. Weaver was considered an independent or disinterested witness; nor did the testimony of either one establish negligence on *139 the part of a particular RTA employee.” (Emphasis added.) The plaintiff contends that the finding that those witnesses were neither independent nor disinterested was manifestly erroneous.
Where Ms. Weaver is concerned we agree. Ms. Weaver worked two days a week on the same block where Mr. Harris worked. They often were on the same bus together. They knew each other by sight. There is no evidence in the record to support a finding that they had any kind of ties or relationship. There is nothing in the record that would have allowed the trial court to assume that Ms. Weber had any reason for bias in favor of Mr. Harris or against the RTA. Any finding to the contrary would be manifestly erroneous. However, viewing the record as whole we conclude that any such error would be harmless in this case because of the nature of Ms. Weber’s testimony which did not amount to much as she did not see the alleged incident and said that she did not speak to the plaintiff immediately following the alleged incident. We still cannot say that the trial judge was manifestly erroneous in concluding that the plaintiff failed to prove that an accident had taken place.
As to Mr. Kingsmill, the judge’s statement that he was not an “independent or disinterested witness” was simply a statement of fact. It was not an attack on Mr. Kingsmill’s integrity. Mr. Kingsmill had in fact assisted Mr. Harris on a number of small legal matters over the years, including making the initial inquiries in this ease and then referring him to a personal injury attorney as that was not one Rof the fields in which Mr. Kingsmill chose to practice. The inference we draw from the record is that the assistance given by Mr. Kingsmill to Mr. Harris could be characterized as being pro bono in nature. Mr. Kingsmill acknowledged the relationship he had with Mr. Harris. He had no reason to be ashamed of it. This Court finds nothing sinister in the relationship and draws no inferences that would reflect negatively on our view of Mr. Kings-mill’s testimony.
The fact remains that Mr. Kingsmill was not a witness to the accident. The only testimony he could give was of a telephone conversation with someone at the RTA whose name he did not know. Viewing the record as whole, we cannot say that the failure of the trial court to attach great weight to this testimony was either an abuse of discretion or manifestly erroneous.
For the foregoing reasons the judgment of the trial court is affirmed.

AFFIRMED

. See, LSA-Const. Art. 5, section 10(B).

. The purpose of this testimony was to contradict RTA's evidence that no claim had been reported because no accident had occurred.